**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: BENJAMIN M. BRUNDAGE | : | |
| Debtor | : | |
| | : | **CIVIL ACTION** |
| BENJAMIN M. BRUNDAGE, | : | |
| Plaintiff, Appellee | : | |
| and Cross-Appellant | : | |
| | : | |
| v. | : | **NOs. 05-2310 & 05-2406** |
| | : | |
| HELEN WAITE, | : | |
| Defendant, Appellant | : | |
| and Cross-Appellee | : | |

Stengel, J.                                                   September 9, 2005

**MEMORANDUM**

This bankruptcy appeal involves a misapplication of basic contract law and a conscious choice, by Helen Waite as creditor, to ignore the stay on state court litigation while Mr. Brundage's bankruptcy was pending.  Ms. Waite's appeal is unencumbered by references to applicable law or reference to the record, and is without any merit.

**I.      Background**

On June 16, 2000, Helen Waite and Benjamin Brundage entered into an agreement for Waite to purchase the now-disputed property at 1905 N. 63rd Street, Philadelphia, from Brundage for $45,000.  The agreement was entitled "Offer to Purchase Real Estate." The Offer stated that the parties would "execute a standard purchase and sales agreement on the terms contained within 45-60 days" and that the "closing shall be on or before

1

August 1, 2000." *See* Bankr. Dec. at 2.  Brundage accepted $2,000 as a deposit.

Settlement, however, did not occur.  On September 11, 2000, Brundage filed a

bankruptcy petition.  On September 12, 2000, Waite sent Brundage a letter proposing a

September 29, 2000 closing date.  The letter listed a purchase price of $35,000.  Brundage

gave the letter to his attorney, never responded to Waite, never signed a sales agreement

and never attended a closing of the "sale."  On February 20, 2001, Waite filed two

secured claims, each in the amount of $2,000, in Brundage's bankruptcy.  On April 9,

2001, Brundage's first bankruptcy was converted from Chapter 13 to Chapter 7, and on

August 7, 2001, his debts were discharged.

   Brundage filed a second bankruptcy on December 1, 2001.  In that bankruptcy,

Brundage listed Waite as an unsecured, nonpriority creditor.[1]  The Chapter 13 plan was

confirmed on February 25, 2003.[2]

   On March 6, 2003, Waite filed a complaint against Brundage in Philadelphia

County Common Pleas Court (March 2003, No. 772), seeking specific performance of the

real estate transaction.  On April 25, 2003, Brundage's attorney wrote to Waite's attorney

advising that the lawsuit was in violation of the bankruptcy stay.  On June 26, 2003,

another letter was sent, advising Waite that the state court action should be withdrawn.  A

---

[1]It is uncontested that Waite was notified of both bankruptcies.

[2]As of the date of this Order, the bankruptcy discharge has not yet been filed by the Bankruptcy Court.  Nonetheless, even if it had been, the Bankruptcy Code requires that the stay of any action against a property subject to the bankruptcy continues until that property is no longer property of the estate. 11 U.S.C. §362(c).

third letter was sent on July 18, 2003, advising Waite's new attorney that the lawsuit was in violation of the bankruptcy stay and should be withdrawn.  Despite ample notice of the bankruptcy itself, as well as the stay, Waite still has not withdrawn her state court action.  Thus, on July 28, 2003, Brundage filed an adversary suit in Bankruptcy Court seeking an Order discontinuing the State Court action.

In a well reasoned, thorough opinion, The Honorable Kevin J. Carey, Bankruptcy Judge, found that (1) the plain language of the Offer was not a valid agreement of sale; (2) even if the court were to assume that the Offer was valid, the Offer was rejected in Brundage's first bankruptcy; and (3) even if the court were to find that the Offer somehow survived the first bankruptcy, Brundage still held legal title to the property upon filing his second bankruptcy, therefore the property was the property of the bankruptcy estate and subject to the bankruptcy stay.  The Bankruptcy Court found, as I do, that Waite's arguments are meritless and entered judgment in favor of Brundage.  Waite was ordered to discontinue the state court action and to pay Brundage $5,547.00.  Rather than withdraw the state court action, Waite filed the instant bankruptcy court appeal.  I will deny the appeal and order Waite to pay damages to Brundage.

## II.    Parties' Positions

### A.    On appeal

In a unique application of real estate contract law, Waite argues that, upon her tender of the $2,000 deposit, the property became hers, was no longer Brundage's, and

3

was therefore outside of the bankruptcy estate.  She contends that the disputed property

was not subject to the bankruptcy stay, and the state court proceeding was proper.[3]  This

approach is wrong and wrong-headed.

Waite also argues, with no support, that Brundage failed to introduce evidence to

the bankruptcy court sufficient to support the attorney's fees awarded.  Finally, Waite

inexplicably posits that the anticipated Order of Discharge issued by the bankruptcy court

will remove the bankruptcy court's jurisdiction and therefore moots any argument that the

common pleas action violates the automatic stay.

In response, Brundage argues that an agreement of sale is only enforceable within

a reasonable period of time.  As Waite waited 3 years to bring this action, Brundage

argues that Waite therefore abandoned her claim to the property.  In the alternative,

Brundage argues that even if the Offer were still valid at the time that Brundage filed his

first (or second) bankruptcy, any claims on that Offer were extinguished by the rejection

of the Offer as an executory contract, as well as the discharge of Waite's claim for the

$2000 deposit.  As to the attorney's fees claim, Brundage points to, and attaches,

attorney's bills that were submitted to the bankruptcy court.  Finally, with regard to

Waite's argument that any objections raised pursuant to the automatic stay are moot,

Brundage notes that the discharge has not yet been filed and in any case, the stay was in

---

[3] Waite also argues that as the title for the property is rightfully hers, the only viable action remaining is for Brundage to sue for the remainder of the $45,000 owed, which would not be stayed by the bankruptcy proceedings.

4

effect when the state court case was filed and the bankruptcy court retains jurisdiction to enforce the Order it issued in April of this year.

     B.     On Cross-Appeal

     Brundage argues that the Bankruptcy Court improperly found that his request for treble damages was preempted by the Bankruptcy Code.  Waite did not respond to these allegations in her Response Brief, or at oral argument.

## II.     Standard of Review

     The standard of review for a District Court sitting in review of a Bankruptcy Court decision is "clearly erroneous" with regard to factual findings, and plenary with regard to legal findings.[4]  *See, e.g. American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999); FED. R.BANKR. PROC. 8013.

## III.     Discussion

     A.     *Whether "Equitable Title" Passed Upon Execution of the Purchase Offer*

     I find that the "Offer to Purchase Real Estate" was, at most, an executory contract.[5]

---

[4]Neither party substantively addressed standard of review in their brief.  Appellee/Cross-Appellant Brundage notes, incorrectly, that the standard of review is "whether evidence on the record supports the factual findings of the trial court," and "whether the trial court committed errors of law."  Appellant/Cross-Appellee Waite blithely states that she agrees with that Standard of Review.  Neither party cites to any statute or case law.

[5]With deference to the well reasoned findings of the Bankruptcy Judge, I will consider this "agreement" to be an executory contract.  In fact, the "Offer to Purchase Real Estate"might be exactly what it claims to be: an offer.  There is absolutely no evidence that Brundage ever "accepted" the offer.  To the contrary, he offered to return the $2,000 to Waite subsequent to the agreement.

In light of Waite's refusal to accept the check back, Brundage cashed it.  Waite, then, could have initiated a tort claim for conversion of her $2,000.  Of course, had this claim been

An executory contract is one in which "the vendee still owes a material part of the purchase price and the vendor has not transferred title, and is not obligated to do so until that price is fully paid." *Atiyeh v. Bear*, 456 Pa. Super. 548, 561, 690 A.2d 1245, 1252 (1997); *see also In re General Datacomm Industries, Inc.*, 407 F.3d 616, 622 (3d Cir. 2005). Here, it is undisputed that Waite paid only $2,000 of the purchase price, and that Brundage has not transferred title.[6]

Though in response to Brundage's argument that the agreement is executory, Waite states that "nothing [is] further from the truth," she fails to cite a single case or statute responding to Brundage's argument that the contract was executory.[7] Given the nature of the agreement and the failure to close on the transfer, Waite's argument that the agreement was *not* executory is not viable.

Under the Bankruptcy Code, 11 U.S.C. § 365(a), the bankruptcy trustee may discharge any executory contract. Moreover, under the Code, if the trustee does not reject or assume the executory agreement within 60 days after the order for Chapter 7 relief, then the contract is deemed rejected. 11 U.S.C. § 365(d)(1).

---

presented, it could have been considered by the Bankruptcy Court, but any state court action to recover the amount would have been in conflict with the bankruptcy stay. Ms. Waite chose instead to file a claim for $2,000 with the Bankruptcy Court, during the course of Brundage's first bankruptcy.

[6]In fact, Waite's attorney *agreed* at oral argument that legal title would not, and could not, transfer until the full purchase price and deed had exchanged hands.

[7]In fact, Waite fails to cite a single case or statute in the entire Response/Reply brief.

Waite's argument that equitable title transfers upon execution of an agreement of sale appears to have some legitimacy, *see, e.g. Alberici v. Safeguard Mut. Ins. Co.,* 444 Pa. Super. 351, 664 A.2d 110 (1995), but she utterly misconstrues the significance of equitable title.  It is well-established that, in Pennsylvania, equitable conversion does not operate to make the equitable title holder's rights superior to that of a bankruptcy trustee's to reject an executory contract.  *In re Philadelphia Penn Worsted Co.*, 278 F.2d 661, 664 (3d Cir. 1960); WILLISTON ON CONTRACTS 78:69 ("if the trustee or debtor in possession elects to reject . . . an executory contract . . .the contract never becomes part of the bankruptcy estate").

B.      *Whether the Award of Attorney's Fees Was Supported By the Record*

Waite fails to make a single legal argument or attach any support for the proposition that the award of attorney's fees was not supported by the record.  Brundage submitted evidence of attorneys fees that were submitted to the Bankruptcy Court, and Waite failed to rebut that assertion.  There is no question attorney's fees are appropriate - Brundage was required to bring this adversary action because Waite refused to dismiss her state court claim, which flouted the stay of bankruptcy.  I will therefore uphold the award of attorney's fees.

C.      *Whether the Anticipated Discharge By the Bankruptcy Court Moots the Issue of Violation of the Automatic Stay*

In addition to being without any merit, this issue is not ripe for review, as no

discharge has yet been filed by the Bankruptcy Court.  Nonetheless, a review of the case law reveals nothing to stand for the proposition that Waite argues.  The Bankruptcy Code requires that the stay of any action against a property subject to the bankruptcy continues until that property is no longer property of the estate and, in a Chapter 7 bankruptcy, until the time a discharge is granted or denied.  11 U.S.C. §362(c).  Thus, the stay against any action with regard to the property itself (should that be deemed part of the estate) or with regard to the sales contract (should *that* be deemed part of the estate), will be in effect until the piece of real estate is no longer the property of the estate.  *See also* 11 U.S.C. §524(a)(2) (a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor").  I therefore dismiss this count of the Appeal as meritless.

      D.     *Whether the Bankruptcy Court Erred in Finding State Law Claims to Be Preempted*[8]

In his Adversary Complaint in bankruptcy court, Brundage argues that Waite's use of a common pleas action to enforce her rights against Brundage constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §2270.5(a) and 73 P.S. § 201-9.02(a).  The bankruptcy judge dismissed the state law claim for treble damages, finding it preempted by the Bankruptcy Code.

---

[8]Appellant/Cross-Appellee fails entirely to address this issue - the sole counterclaim - in her Reply/Response Brief.

The UTPCPL forbids a creditor from acting in any manner, "the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." 73 P.S. § 2270.4(b)(4). It appears that this is the theory under which Brundage asked for treble damages in bankruptcy court.[9]

Courts should not lightly infer preemption. *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987). Preemption may be inferred, however, where the federal legislation at issue is "sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation." *Id.* at 497 (internal citations omitted). The Supreme Court reaffirmed this principle in *English v. General Electric Co.*, 110 S.Ct. 2270 (1990). In *English*, however, the Court also noted that normally "state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law." *Id.* at 2280.

In *Abramson v. Federman & Phelan*, 313 B.R. 195 (W.D.Pa. 2004), Chapter 13 debtors brought an adversary proceeding in bankruptcy court for alleged violations of, *inter alia*, the UTPCPL. The bankruptcy court found that the Bankruptcy Code preempted the state law claims. *Id.* at 198. The court held further that one of the "fundamental purposes of the bankruptcy system is to adjudicate and conciliate all competing claims to a debtor's property in one forum." *Id.* at 197.

---

[9]The citation to the UTPCPL in the bankruptcy judge's opinion is to 73 P.S. § 2270.4(b)(5)(v), (6)(vi). The citation in Brundage's adversary complaint, on the other hand, is to § 2270.5(a) and § 201-9.2(a).

Further, the Bankruptcy Code explicitly provides for punitive damages, 11 U.S.C. § 362(h), but it does not provide for treble damages.  The UTPCPL provides for treble damages, where a person "purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3" of the UTPCPL.  73 P.S. § 201-9.2(a).[10]

I find that the bankruptcy court was justified in finding federal preemption of Brundage's claim for treble damages.

## IV.   Conclusion

For the above reasons, I will deny both Waite's Bankruptcy Appeal and Brundage's Cross-Appeal, and will uphold the Bankruptcy Court's judgment.  An appropriate order follows.

---

[10]It is not clear that the underlying facts in this case even create a viable UTPCPL action. Brundage does not coherently argue why they should, other than noting, without citation, that "applicable state law merely punctuates the remedies available to the court when a party has acted illegally in violating the automatic stay."  Moreover, the cases that Brundage string cites are inapposite.  In both *In re Patterson*, 263 B.R. 82 (E.D.Pa. 2001), and *In re Dukes*, 1997 WL 860676 (Bankr. E.D. Pa. 1997), the underlying facts created a distinct UTPCPL cause of action, separate from the stay violation.  In *In re Aponte*, 82 B.R. 738 (E.D.Pa. 1988), the defendant had willfully violated the automatic stay on a number of occassions, but had also refused to turn the debtor's hot water back on, in violation of a bankruptcy court order.  The court further found that "defendant's purpose in engaging in these actions was to force debtor out of the unit, and that this was an attempt to harm debtor by violating debtor's property interest in the unit." *Id*. at 747. While this case is somewhat similar, it is still easily distinguishable from the instant case, in which Brundage appears to ask for treble damages *solely* as a result of the violation of the automatic stay.

10

**ORDER**

**AND NOW**, this        day of September, 2005, upon consideration of the Bankruptcy Appeal of

Appellant/Cross-Appellee Helen Waite, all responses thereto, and oral argument by both parties,

it is hereby **ORDERED** the Appeal is **DENIED**.

Upon consideration of the Bankruptcy Cross-Appeal of Cross-Appellant/Appellee

Benjamin Brundage, all responses thereto and oral argument by both parties, it is further

**ORDERED** that the Cross-Appeal is **DENIED**.

It is further **ORDERED** that

(1)  Appellant/Cross-Appellee Helen Waite is to pay damages to Appellee/Cross-

Appellant Benjamin Brundage in the amount of $5,547.00.

(2) The State Court Action filed by Appellant/Cross-Appellee Helen Waite is to be

withdrawn within ten (10) days of the date of this Order.

(3) Appellant/Cross-Appellee Helen Waite shall submit proof of withdrawal of the State

Court Action with this court within fifteen(15) days of this Order.


BY THE COURT:


_____

LAWRENCE F. STENGEL, J.

12